[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-14738
Non-Argument Calendar

_____

D.C. Docket No. 1:17-cv-01422-ELR

LELA I. LEWIS,

Plaintiff - Appellant,

versus

RESIDENTIAL MORTGAGE SOLUTIONS,
SERVIS ONE, INC.,
d.b.a. BSI Financial Services,

Defendants - Appellees,

DOES 1-10,

Defendant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(February 6, 2020)

Before WILSON, HULL and MARCUS, Circuit Judges.

PER CURIAM:

Plaintiff-appellant Lela I. Lewis appeals from the district court's order granting summary judgment to defendants-appellees Residential Mortgage Solutions, Inc. ("RMS") and Servis One, Inc., d/b/a BSI Financial Services, Inc. ("BSI" and, together with RMS, the "Defendants"). On appeal, Lewis argues that the district court abused its discretion by improperly considering hearsay evidence. After thorough review, we affirm.

I.

The relevant facts, for purposes of summary judgment, are these. On November 3, 2006, Lewis took out a loan in the amount of $294,400 from Encore Credit Corporation ("Encore"). The loan was secured by a mortgage in favor of Mortgage Electronic Registrations Systems ("MERS"), as Encore's nominee, on residential property at 371 Angier Court in Atlanta, Georgia. MERS assigned the mortgage to RMS on December 8, 2014.

Lewis had begun to suffer financial hardship the year before, in 2013. She engaged Specialized Loan Servicing, LLC ("SLS"), which was servicing the loan on RMS's behalf, to discuss what debt relief options she might have at her disposal. In August of that year, SLS provided Lewis with a loan modification application, though Lewis failed to return the paperwork needed to complete the application.

2

Over the next three years, Lewis continued to seek to modify her loan.  But her requests were denied by SLS for failure to provide the necessary documents.

In November 2016, SLS transferred servicing of Lewis's loan to BSI.  Shortly thereafter, BSI notified Lewis she was in default under the loan and gave her until February 1, 2017 to cure.  After denying one further loan modification attempt due to missing paperwork, BSI engaged counsel to proceed with foreclosure in February 2017.  RMS ultimately purchased Lewis's property in a non-judicial foreclosure sale on April 4, 2017 for $387,858.18.

Before the sale took place, Lewis filed suit in the State Court of Fulton County, Georgia on March 29, 2017.  She sought to enjoin the sale and brought claims of breach of contract, trespass on title and intentional infliction of emotional distress.  The Defendants timely removed this action to the United States District Court for the Northern District of Georgia, and first moved for summary judgment on February 12, 2018.  After the district court denied their motion without prejudice, the Defendants submitted a second motion for summary judgment on June 21, 2018.

In support of this second motion, the Defendants attached an affidavit from Natalie Owens (the "Owens Affidavit"), an "FCL supervisor/Doc Signing" at BSI. In her affidavit, Owens identified -- and attached -- the following documents:

1. the Security Deed among Lewis, as borrower, Encore, as lender, and MERS, as Encore's nominee, dated November 3, 2006

2. the Adjustable Rate Note, dated November 3, 2006, evidencing the $294,400 loan from Encore to Lewis

3. a Loan Modification Agreement between Lewis and SLS dated October 20, 2010

4. the Assignment from MERS to RMS, dated December 8, 2014

5. Correspondence from SLS to Lewis, dated August 26, 2013, responding to her request for a loan modification, and dated November 4, 2013 rejecting her request for failure to respond

6. Correspondence from SLS to Lewis, dated October 2, 2015 and January 22, 2015, rejecting requests for loan modification

7. a Notice of Servicing Transfer, dated November 14, 2016, from SLS to Lewis informing her BSI would collect her payments moving forward

8. Correspondence from BSI to Lewis, dated December 8, 2016, informing Lewis BSI was now servicing her loan and confirming the amount owed thereunder

9. a Notice of Servicing Transfer, dated December 8, 2016, from BSI to Lewis confirming BSI was now servicing Lewis's loan

10. a Notice of Default and Intent to Accelerate, dated December 28, 2016, from BSI to Lewis, formally notifying Lewis she was in default under her loan and confirming the amount she owed to cure that default

11. Correspondence from BSI to Lewis, dated January 10, 2017, confirming receipt of her loan modification application and informing her the application was incomplete

12. Correspondence from BSI to Lewis, dated January 31, 2017, rejecting her loan modification application and identifying the documents that were missing from her application

4

13. Correspondence from Albertelli Law, BSI's foreclosure counsel, to Lewis, dated March 2, 2017 and March 3, 2017, providing her with mandated FDCPA disclosure and a Notice of Sale Under Power

14. Correspondence from BSI to Lewis, dated March 6, 2017 and March 15, 2017, responding to her payoff inquiries

15. a Qualified Written Request, dated March 16, 2017, from Lewis to BSI and Albertelli Law; and Correspondence from BSI to Lewis, dated March 27, March 30, and April 4, 2017, responding to that request

16. Correspondence from BSI or Albertelli Law to Lewis, dated July 28, August 2, August 24, and September 15, 2017 responding to her payoff inquiries

17. the Deed Under Power of Sale, recorded on November 2, 2017

On August 31, 2018, the magistrate judge issued his final report and recommendation, advising the district court to grant the Defendants' second motion for summary judgment.  In so doing, the magistrate judge concluded that he could consider the Owens affidavit on summary judgment because it attached documents admissible under the business records exception to the hearsay rule.  The district court agreed.  Lewis timely appealed, arguing that the district court erred in considering the Owens Affidavit at the summary judgment stage.

II.

While we review the grant of a motion for summary judgment de novo, we review for abuse of discretion a district court's ruling on the admissibility of

evidence in the context of summary judgment. Corwin v. Walt Disney Co., 475 F.3d 1239, 1249 (11th Cir. 2007); Taylor v. Food World, Inc., 133 F.3d 1419, 1422 (11th Cir. 1998). The "deference that is the hallmark of abuse-of-discretion review requires that we not reverse an evidentiary decision of a district court unless the ruling is manifestly erroneous." United States v. Frazier, 387 F.3d 1244, 1258 (11th Cir. 2004) (en banc) (quotations and citations omitted). Indeed, "it is by now axiomatic that a district court enjoys considerable leeway in making these determinations." Id. (quotations omitted). We must affirm "unless we find that the district court has made a clear error of judgment, or has applied the wrong legal standard." Id. at 1259.

### III.

In arguing that the district court erred in considering the Owens Affidavit on summary judgment stage, Lewis claims that the affidavit was inadmissible hearsay that could not have been reduced to admissible form at trial. We disagree.

Hearsay is defined as an out-of-court statement that is offered as evidence "to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c). Hearsay evidence is generally inadmissible unless it falls under one of the stated exceptions to the hearsay rule. See Fed. R. Evid. 803-04, 807. Relevant to this case is the business records exception, which makes admissible a "record of an act, event, condition, opinion, or diagnosis" if:

(A) the record was made at or near the time by -- or from information transmitted by -- someone with knowledge;

(B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;

(C) making the record was a regular practice of that activity;

(D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and

(E) the opponent does not show that the source of the information or the method of circumstances of preparation indicate a lack of trustworthiness.

Fed. R. Evid. 803(6).

As we've said, the "touchstone of admissibility under the business records exception to the hearsay rule is reliability, and a trial judge has broad discretion to determine the admissibility of such evidence." United States v. Langford, 647 F.3d 1309, 1327 (11th Cir. 2011) (quotation omitted). To satisfy the exception, we require that "it was the business practice of the recording entity to obtain such information from persons with personal knowledge and the business practice of the proponent to maintain the records produced by the recording entity. Id.

The documents attached to the Owens Affidavit fall well within the bounds of this exception. For starters, requirements (A) through (C) are easily met. All of the documents are contemporaneous records, prepared by parties with first-hand

7

knowledge -- either Encore, as lender; SLS and BSI, as loan servicers; Albertelli Law, as foreclosure counsel; or Lewis herself.  And these documents are naturally of the type regularly produced, and kept in the ordinary course of providing loans to borrowers secured by home mortgages.

Moreover, Owens herself is a "qualified witness" permitted to introduce these documents into evidence.  She averred that she was a foreclosure supervisor at BSI and was "personally familiar with the facts set forth" in her affidavit, along with "the records of BSI Financial Services with regard to this matter."  This is all the rule requires.  The "qualified witness" need not herself to have prepared the documents, "so long as other circumstantial evidence and testimony suggest their trustworthiness."  Itel Capital Corp. v. Cups Coal Co., 707 F.2d 1253, 1259 (11th Cir. 1983).  As for requirement (E), Lewis has given us no reason to doubt that the documents in the Owens Affidavit are what they purport to be.  Much to the contrary, she has referred to many of these documents herself in her pleadings throughout this litigation.  Thus, because the Owens Affidavit falls within an exception to the rule against hearsay, the district court did not abuse its discretion by considering it at the summary judgment stage.

But even if we were to conclude otherwise, we would still affirm.  This is so because the Owens Affidavit could have been reduced to non-hearsay form at trial. "The general rule is that inadmissible hearsay cannot be considered on a motion for

summary judgment." Macuba v. Deboer, 193 F.3d 1316, 1322 (11th Cir. 1999) (quotation and footnote omitted). Nonetheless, "a district court may consider a hearsay statement in passing on a motion for summary judgment if the statement could be reduced to admissible evidence at trial." Id. at 1323 (quotation omitted).

The most obvious way to reduce hearsay to admissible form is to call the declarant to testify at trial. See Pritchard v. S. Co. Servs., 92 F.3d 1130, 1135 (11th Cir. 1996) (acknowledging that an affidavit can be reduced to admissible form at trial by calling the affiant to testify as a witness); see also Smith v. LePage, 834 F.3d 1285, 1296 n.6 (11th Cir. 2016) (noting that one way to reduce hearsay to admissible form is to have "the hearsay declarant testify directly to the matter at trial" (quoting Jones v. UPS Ground Freight, 683 F.3d 1283, 1293-94 (11th Cir. 2012))).

We recognized that this approach does not work in a couple of instances. We don't allow courts to consider hearsay evidence when there is only a hypothetical witness who might come forward to testify at trial. See Jones, 683 F.3d at 1294 ("The possibility that unknown witnesses will emerge to provide testimony on this point is insufficient to establish that the hearsay statement could be reduced to admissible evidence at trial."). We also don't allow courts to consider hearsay at the summary judgment stage when "the declarant has given sworn testimony during the course of discovery that contradicts the hearsay statement." Id.

But neither of those limitations applies here.  In this case, we see no indication in the record that Owens -- or another BLS employee familiar with these documents and the company's record maintenance -- would be unavailable to testify at trial. See McMillian v. Johnson, 88 F.3d 1573, 1585 (11th Cir. 1996) ("There was no indication . . . that the letter could not be reduced to admissible evidence at trial. Indeed, that the letter at issue was based on the writer's personal knowledge indicates that there was no impediment to the writer testifying at trial as to the facts described in the letter." (citation omitted)).  Moreover, Lewis has not argued that anything in the record contradicts the Owens Affidavit.  Nor do we see how she could, since the evidence available supports the veracity of the documents included in the affidavit and their admissibility under the business records exception.  Accordingly, the district court did not abuse its discretion in admitting the documents either as business records or as reducible to admissible form, and we affirm.

**AFFIRMED.**